UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|    PING CHEN | ) | Case No. 08-17862-SSM |
|    a/k/a JENNY CHEN | ) | Chapter 7 |
| | ) | |
|                 Debtor | ) | |
| | ) | |
| SHAHID KHAN | ) | |
| | ) | |
|                 Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 09-1074 |
| | ) | |
| PING CHEN | ) | |
| | ) | |
|                 Defendant | ) | |

**MEMORANDUM OPINION**

This is an action by a creditor, Shahid Khan, objecting to the discharge of the defendant, Ping Chen, also known as Jenny Chen, based on alleged false statements in connection with her bankruptcy filing. A trial was held without a jury on September 21, 2009. The plaintiff and the defendant were each present and were represented by counsel. At the conclusion of the evidence, the court took the issues under advisement. Having carefully reviewed the evidence, the court does not find that the debtor intentionally misrepresented material facts in her schedules or testimony. For that reason, the complaint will be dismissed, and the debtor will be granted a discharge. This opinion constitutes the court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52(a).

1

Background and Findings of Fact

Ping Chen, also known as Jenny Chen ("the debtor") filed a voluntary petition in this court on December 17, 2008, for relief under chapter 7 of the Bankruptcy Code and has not yet received a discharge. In the course of the case, motions for relief from the automatic stay were brought with respect to the debtor's residence located at 4634 Battenburg Lane, Fairfax, Virginia, and with respect to commercial property located at 15601 Brandywine Road, Brandywine, Maryland, and 533-537 Old Town Mall, Baltimore, Maryland. Those motions were all granted, and the trustee has filed a report of no distribution. On March 23, 2009, Shahid Khan, a judgment creditor who had loaned the debtor $100,000, filed the present adversary proceeding objecting to the debtor's discharge on the ground that she knowingly omitted and undervalued assets from her schedules and statement of financial affairs and testified falsely at the § 341 meeting of creditors.

The evidence shows that Mr. Khan and Ms. Chen first met sometime between 2001 and 2002 when Ms. Chen was enrolled in an English language course with Mr. Khan's wife. Soon thereafter, Mr. Khan and Ms. Chen developed a business relationship involving a number of transactions. At first, Mr. Khan simply sold Ms. Chen hosiery and other items he imported to the United States, which Ms. Chen then sold in various retail outlets where she worked. Ms. Chen then assumed a lease previously entered into by Mr. Khan of warehouse property located at 1325 5th Street, NE, Washington, District of Columbia. Ms. Chen testified that Mr. Khan and a man called Charlie encouraged her to register a corporation in the District of Columbia for the purpose of assuming the lease. At their behest, Ms. Chen registered JC Ventures, Inc. with the District of Columbia and assumed the lease for the property. Ms. Chen testified that Charlie, and

not her, ran a business called YY Mart out of the premises  Today, she testified, Thai Food Depot—a food store—operates in part of the property.

Mr. Khan and Ms. Chen's final business transaction was a loan Ms. Chen took out from Mr. Khan to purchase an investment house located at 4504 Dix Street, Washington, District of Columbia on April 25, 2005.  Ms. Chen testified that Charlie and Mr. Khan approached her with the idea of purchasing the property; she was influenced by them because she trusted them and they recommended the property as a good investment.  According to Ms. Chen, Charlie then encouraged her to borrow money from Mr. Khan to purchase the property.  Mr. Khan testified that Ms. Chen approached him about the loan to purchase the Dix Street Property.  On April 29, 2006, Mr. Khan endorsed over to Ms. Chen a check in the amount of $100,000 representing money he had borrowed on an equity credit line against his home in Falls Church, Virginia.  The loan was to bear interest at 20% per annum and was due December 31, 2006.  Ms. Chen was unable to pay the loan when it became due, and Mr. Khan eventually brought suit against her in the Circuit Court of Fairfax County, Virginia, which entered a judgment against her on December 2, 2008, for $100,000 in principal and $26,666.54 in interest.

Ms. Chen testified that she neither visited the Dix Street Property nor rented it out. She did pay the $2,000 monthly mortgage for some period until she eventually fell behind.  The mortgage holder then foreclosed on the property on or about November 25, 2008.  The debtor reported the foreclosure in response to Question No. 5 on her Statement of Financial Affairs.

In addition to her business dealings with Mr. Khan, Ms. Chen ran two stores of her own and bought investment properties.  On March 25, 2004, Ms. Chen assumed a lease of property located at 809 Pendleton Street, Alexandria, Virginia, after purchasing Dollar Plus, the discount

retail store operating in the leased premises. The owner of the Pendleton Street property, Hosaim Mabudian, testified that he agreed to Ms. Chen's assumption of the lease after reviewing her credit report. Ms. Chen testified that she ran the business for approximately six months before selling the store. Although she attempted to transfer the lease to the new owner, Mr. Mabudian would not consent to the transfer. Therefore, Ms. Chen remained liable on the lease, but testified that the new owner of Dollar Plus was ultimately responsible for paying Mr. Mabudian the rent.

Eventually Ms. Chen learned that the new owner stopped paying the rent. On December 3, 2007, Mr. Mabudian obtained an order from the Alexandria General District Court permitting him to take immediate possession of the leased premises and setting a hearing to establish final rent and damages. Eventually he received a judgment against Ms. Chen for $16,000.

Ms. Chen's next business venture was a store located at 5552 Kenilworth Avenue, Riverdale, Maryland called JC Mart. Ms. Chen testified that Charlie leased space in a shopping center in Riverdale and that in December 2007 she took over the leased store and sold general goods under the name JC Mart. Ms. Chen also registered a corporation called JC Mart, Inc., although the lease of the Riverdale property was in her name. As of May 2008, Ms. Chen reported that she received income of about $1,500 a month from JC Mart. Although the lease has several years to run, the landlord has obtained a judgment against Ms. Chen for $29,000 in unpaid rent and she will be required leave the store in two weeks. Ms. Chen also testified that the JC Mart's inventory is owned by JC Mart, Inc.

Ms. Chen's last business venture at issue is commercial property located at 533 and 537 Oldtown Mall, Baltimore, Maryland, which she bought for $200,000 on October 31, 2006. Ms.

Chen testified that she did not make any down payment to purchase the property.  Instead, she obtained two mortgage loans—a first position mortgage for $130,000 and a second position mortgage for $70,000.  On June 5, 2007, a certificate of satisfaction was recorded for the second mortgage.  Ms. Chen testified that her then-husband, Jake Wang, and some of his associates gave her the money to satisfy the second mortgage.  According to Ms. Chen, the arrangement was that if she were to use the Oldtown Mall Property to open a store, the $70,000 would be an investment in the business.  If she was unable to open a store, then the $70,000 would be a loan.  Ultimately, Ms. Chen did not open a store in the Oldtown Mall Property because she did not have enough money.

The last piece of property at issue is Ms. Chen's home located at 4634 Battenburg Lane, Fairfax, Virginia, which she bought in her own name in April 2006.  On March 9, 2007—21 months prior to filing her bankruptcy petition—Ms. Chen transferred the Battenburg Lane property to herself and her then-husband, Mr. Wang, as tenants by the entirety.  Mr. Wang paid no consideration for his ownership interest in the Battenburg Lane property.  Ms. Chen omitted the transfer to Mr. Wang from her answer to Question 10 on her Statement of Financial Affairs, which requires the debtor to list all transfers of property, not in the ordinary course of business, made within two years of the petition filing.  At trial Ms. Chen testified that she transferred the property to her husband to have a better chance of modifying the mortgage with her lender.  She did not, however, explain why she omitted the transfer from her Statement of Financial Affairs.

In the schedules filed with her bankruptcy petition, Ms. Chen listed her ownership interests in three pieces of real property: her home on Battenburg Lane, which she noted was owned as tenants by the entirety; the Oldtown Mall property; and the property in Brandywine,

Maryland. On her schedule of personal property, she listed her ownership interest in JC Mart. Both Mr. Mabudian and Mr. Khan are listed as unsecured, nonpriority creditors on Schedule F. Three executory contracts are listed on Schedule G: a lease for the Oldtown Mall property, a lease for the Brandywine property, and a lease on the 5th Street property. Ms. Chen's current income is listed in Schedule I as including $1,140 in income received from the operation of a business and $1,350 in rental income, presumably from the Brandwine property. Her expenses as itemized on Schedule J total $5,261.95, which includes the monthly mortgage payment of $2,804.00 for her home. In response to Question 18 in the Statement of Financial Affairs, Ms. Chen listed two business: JC Mart located at the Riverdale property and JC Ventures, Inc. as a sole proprietorship operating from 2006 until 2007.

<u>Conclusions of Law and Discussion</u>

I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. An objection to discharge is a core proceeding in which a final judgment may be entered by a bankruptcy judge, subject to the right of appeal. 28 U.S.C. § 157(b)(2)(I). Venue is proper in this district under 28 U.S.C. § 1409(a). The debtor has been properly served and has appeared generally.

II.

An individual debtor will be denied a discharge if, among other conduct, "[t]he debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" § 727(a)(4)(A), Bankruptcy Code. In a complaint objecting to the debtor's

discharge, the burden of proof is on the objecting party, and the standard of proof is preponderance of the evidence. *Harmon v. McGee (In re McGee)*, 157 B.R. 966, 973 (Bankr. E.D. Va. 1993). Once the creditor has established a prima facie case, however, the burden shifts to the debtor to provide satisfactory evidence to rebut the allegations. *Farouki v. Emirates Bank Int'l. Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994) ("While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case.").

With respect to § 727(a)(4), courts have recognized that competing concerns are at stake. *Nat'l Post Office Mail Handlers, Watchmen, Messengers & Group Leaders Division v. Johnson (In re Johnson)*, 139 B.R. 163, 165 (Bankr. E.D. Va. 1992), *citing Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987). On the one hand, bankruptcy is an equitable remedy in which "the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor." *Johnson*, 139 B.R. at 166. On the other hand, the very purpose of § 727(a)(4)(A) is to ensure that "those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs," and that "complete, truthful, and reliable information is put forth at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction." *Id.*

As the Fourth Circuit has explained, "In order to be denied a discharge under this section, the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud." *Williamson v. Fireman's Fund Ins. Co. (In re Williamson)*, 828 F.2d 249, 251 (4th Cir. 1987). Further, "because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the

7

facts and circumstances of a case." *Id.* at 252, *quoting In re Devers*, 759 F.2d 751, 753-4 (9th Cir. 1985). Finally, "the false oath made by the debtor must have related to a material matter." *Williamson*, 828 F.2d at 251. The subject matter of a false oath is "material," and thus sufficient to bar discharge, "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* at 252, *citing Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984).

### III.

Mr. Khan alleges that the debtor violated § 727(a)(4)(A) by knowingly and fraudulently making a false statement on her filed schedules and statement of financial affairs and in her testimony at the § 341 meeting of creditors. More specifically, the complaint lists seven omissions that Mr. Khan contends constitute false oaths or accounts and, thus, prevent the debtor from receiving a discharge under § 727. To resolve the issue, the court must first determine whether the debtor made one or more materially false statements and then whether the debtor had the requisite intent to deceive. *Williamson*, 828 F.2d at 251.

### A.

Of the debtor's seven alleged omissions, only two, in the court's view, clearly fall into the category of false statements that—provided they were made willfully with the intent to defraud—would support a denial of discharge.

First, the debtor failed to disclose the transfer of the Battenburg Lane property from her to her and Mr. Wang as tenants by the entirety less than two years prior to the bankruptcy filing. Question 10 in the Statement of Financial Affairs requires the debtor to "[l]ist all other property,

other than property transferred in the ordinary course of the business of financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." A transfer of property from a debtor to the debtor and his or her spouse as tenants by the entirety is a "transfer" within the meaning of the Bankruptcy Code. *See Zanderman, Inc. v. Sandoval (In re Sandoval)*, 153 F.3d 722, 1998 WL 497475 (4th Cir. 1998) (unpublished table decision). In response to Question 10, the debtor listed two transfers—property located on 7th Street and property located at 5021 Hanna Place, both in the District of Columbia. Omitted from this section is the debtor's transfer of the Battenburg Lane property to her and her husband in March 2007. Since the debtor filed for bankruptcy in December 2008, all transfers after December 17, 2006, two years before the petition was filed, should have been included. Information as to such a transfer would clearly be material, since the trustee has the power to avoid an transfer made within two years of the filing of the petition for less than reasonably equivalent value. § 548(a)(1)(B), Bankruptcy Code. To the extent there was equity in the property, a 100% interest in the property would clearly be more valuable than a half-interest. Consequently, because the debtor should have included the transfer of her home and she failed to, she made a false statement on her statement of financial affairs.

The debtor's second omission was her failure to disclose her interest in the Dollar Plus store she operated in Alexandria, Virginia from March 25, 2004 to about September 2004. Question 18 of the Statement of Financial Affairs requires the debtor to disclose any business, as well as the beginning and ending dates of the business, where the debtor was an owner, director, officer, or managing executive within six years before filing a petition. The debtor testified that she purchased Dollar Plus and leased the store on Pendleton Street from which to operate the

business. Although the debtor listed both JC Mart and JC Ventures, Inc., she did not list Dollar Plus in response to Question 18 of her Statement of Financial Affairs. Because any business that she owned since December 2002—six years before the filing of her petition—should have been listed in Question 18 of the Statement of Financial Affairs, and because she owned the Dollar Plus store during that time period, but failed to list it, the omission constitutes a false statement.

B.

The remaining alleged false statements are not supported by the evidence. These consist of the debtor's alleged undervaluation of the Oldtown Mall property and her alleged failure to list (1) her ownership of inventory held at the JC Mart; (2) her ownership of the Dix Street property; (3) her business dealings at the 5th Street property; and (4) her business dealings at the Oldtown Mall Street property in Baltimore, Maryland.

With respect to the Oldtown Mall property, Mr. Khan did not seriously press the issue at trial, and the evidence was at best equivocal. On Schedule A, the debtor lists the property as being worth $86,000 (subject to a lien of $120,903) as of the filing of her bankruptcy petition in December 2008. Mr. Khan alleged in the complaint that the property was actually worth $170,000, and he provided copies of the Maryland Department of Assessments and Taxation printouts that appear to assess the property for real estate tax purposes at $128,899 as of July 2008.[1] At trial, Mr. Khan conceded that he had no personal knowledge of the value of the

---

[1] The assessment printouts are, to say the least, confusing. They reflect an aggregate "base value" for the two parcels of $87,000, with "phase-in" amounts being reported as of July 1st of 2008 and 2009. It would appear that the property was reassessed on January 1, 2008, but that Maryland law requires assessment increases to be "phased-in" over a three year period. Md.
(continued...)

10

property and provided no support for his assertion that the property was worth $170,000. For her part, the debtor likewise did not offer any explanation to support her assertion that the value of the property was $86,000 at the time she filed her petition. Because the only objective evidence presented as to the value of the property is the Maryland tax assessment,[2] the court would be inclined to adopt the tax assessed value of $128,899 if, for example, the court were required in the context of a motion for relief from the automatic stay to determine whether the debtor had equity in the property. But given that even professional real estate appraisers frequently arrive at widely-varying opinions of value for commercial real estate, any such valuation must be understood not as an objectively precise dollar amount, but rather as the center-point of a range of values representing what a willing buyer would pay a willing seller, neither party being under any constraints. In the absence of some evidence as to what variation from the center-point would be normal, the court cannot find that the debtor's valuation is false in the sense that it is outside the range of prices at which the property was likely to sell as of the filing date.

The remaining falsehoods alleged in the complaint require only brief discussion. First, the evidence does not show that the debtor's omission of the JC Mart inventory from her schedules and at the § 341 meeting was a false statement. The debtor testified that the inventory was owned by the corporation, not by her. No evidence was offered by Mr. Kahn to the

---

[1](...continued)
Code, Tax - Property § 8-103. Thus, $87,000 apparently represents the value before the 2008 reassessment, with $128,899 representing the "phase-in" assessment as of July 1, 2008. When fully phased-in, the assessment would apparently be $212,700, which is consistent with the $200,000 paid by the debtor.

[2] Records of real estate tax assessments are admissible to prove the value of the assessed property under the agency-records exception to the hearsay rule in Federal Rule of Evidence 803(8). *Christopher Phelps & Assocs. LLC v. Galloway*, 492 F.3d 532 (4th Cir. 2007).

11

contrary. Moreover, the debtor listed her ownership interest in JC Mart in Question 18 of her Statement of Financial Affairs.

Second, the debtor's omission of the Dix Street property from her schedules was likewise not shown to be a false statement. The debtor filed for bankruptcy on December 17, 2008. The Dix Street property was sold at foreclosure on November 25, 2008– twenty-two days before the debtor filed for bankruptcy. Therefore, as of at least November 25, 2008, the debtor had no ownership interest in the Dix Street property to report on her schedules, and she reported the foreclosure on the Statement of Financial Affairs.

Third, the evidence does not show that the debtor omitted any businesses operating at the 5th Street property. She testified that although she leased the property, she never operated a business from the location. Instead, Charlie operated YY Mart and then the debtor leased part of the property to Thai Food Corp. and a motorcycle store. The debtor also testified that she did not list rental income from the 5th Street property because she used the rents she received to pay the rent she herself owed. Specifically, the debtor testified that she received $1,800 a month in rent from the sublease of the 5th Street property, but owed the landlord $1,950 a month. So far as appears from the evidence, the debtor lost money on the sublease of the 5th Street property. It was unclear from the debtor's testimony whether the $1,800 a month she received came only from the Thai Food Corporation or also included the motorcycle shop. In any event, Mr. Khan provided no evidence to suggest that the debtor received rental income from the property above the $1,950 she owed each month to the landlord.

Finally, the evidence does not show that the debtor omitted any businesses she operated at the Oldtown Mall property. Although the debtor admitted that she purchased the Oldtown

Mall property with the intent of opening retail stores there, she testified that once she bought the property she did not have enough money to actually open a business. No direct evidence was presented to the contrary. Because the business was not yet up and running, the schedules and statement of financial affairs can hardly be deemed false for not disclosing it.[3]

C.

Notwithstanding the failure of proof with respect to a number of the alleged false statements, the evidence, as noted, does establish two material omissions from the debtor's Statement of Financial Affairs, namely: (a) the transfer of an interest in the Battenburg Lane property to her now-former husband; and (b) her operation of the Dollar Plus store on Pendleton Street. Accordingly, the court must determine whether the omissions were willful and done with the intent to defraud her creditors. *Williamson*, 828 F.2d at 251. Based on the facts and on the debtor's demeanor while testifying at trial, the court finds they were not.

With respect first to the Battenburg Lane property, the debtor testified that she deeded an interest to her husband after speaking with a loan officer who told her that her chances of refinancing and obtaining an equity line of credit would be better if her husband was also listed on the deed of trust. The debtor then transferred the home and attempted to refinance it, but was rejected. She also testified that her husband paid most of the $2,800 monthly mortgage payment on the home while she contributed about $500 a month. Although this transfer should plainly

---

[3] Because it was not raised in the complaint, the court does not address the debtor's failure to list her former husband and his associates as unsecured creditors for the $70,000 they loaned her to satisfy the second mortgage on the Oldtown Mall property. The debtor testified that the $70,000 was an investment or a loan, depending on what the debtor did with the property, and that in any event the loan was to her corporation, JC Mart. No evidence was presented to rebut the debtor's testimony and characterization of the money provided to her.

have been listed on the debtor's Statement of Financial Affairs, there is no evidence to suggest the omission was other than an oversight or lack of attention to detail. This is not a situation in which the existence of the property was hidden. Quite the contrary: the debtor's interest in the property was listed on her schedules, as were the two deeds of trust against the property. The debtor did not claim the property—which she valued as $330,000, subject to deeds of trust totaling $370,498—as exempt. Given the apparent lack of equity, as well as the lack of any claim of exemption based on the entireties ownership, there is no obvious reason why the debtor would wish to conceal from the trustee or creditors the fact that the property had initially been titled solely in her name before being retitled in her and her husband's name. Accordingly, while the court does not condone the failure to report the retitling, the court cannot find an intent to mislead.

With respect to debtor's operation of the Dollar Plus store, the evidence is unrefuted that she owned the business for only six months and had sold it long prior to the bankruptcy filing. There is no evidence that she retained a residual interest. She did of course retain a residual liability on the lease, and the judgment Mr. Mabudian obtained against her for rent on the Pendleton Street property is reported on the schedules. Again, no obvious reason appears why the debtor would want to conceal the historical fact of having at one time operated a business at the location, and the court can only conclude that the omission resulted from negligence rather than a desire to mislead creditors or the trustee. *See Cullinan Assoc., Inc. v. Clements (In re Clements)*, 131 F.3d 133, 1997 WL 727593 (4th Cir. 1997) (unpublished table decision) (debtor's confusion at meeting of creditors and lapse of time between petition preparation and filing may support grant of discharge despite inaccurate statements in petition).

IV.

In summary, the court does not find that the plaintiff has met his burden of proving that the debtor made materially false statements, either at the meeting of creditors or on her schedules or statement of financial affairs, willfully and with intent to defraud. A separate judgment will be entered dismissing the complaint.

Date: _____          _____
                                                                        Stephen S. Mitchell
Alexandria, Virginia                                      United States Bankruptcy Judge


Copies to:

Bennett A. Brown, Esquire
3905 Railroad Avenue, Suite 200N
Fairfax, VA  22030
Counsel for the plaintiff

Gregory H. Counts, Esquire
Tyler, Bartl, Ramsdell & Counts, P.L.C.
700 S. Washington St., Suite 216
Alexandria, VA 22314
Counsel for the defendant

H. Jason Gold, Esquire
Wiley Rein LLP
7925 Jones Branch Drive
Suite 6200
McLean, VA 22102
Chapter 7 trustee